GRIMES et al. v. TALBOT et al.

No. 12195.

Court of Civil Appeals of Texas. Galveston.

July 27, 1950.

Rehearing Denied Oct. 5, 1950.

Leroy L. Moore, Crockett, and Grimes & Owen, Taylor, E. M. Grimes, Taylor, of counsel, for appellants.

Marshall & King, Graham, and Adams & Morgan, Crockett, B. W. King, Graham, of counsel, for appellees.

CODY, Justice.

This is an appeal from a judgment dismissing appellants' suit when the court sustained appellees' special exceptions to appellants' fourth amended original petition and trial amendments thereto, and appellants refused further to amend.

By their pleadings appellants sought the cancellation of their written assignment of an undivided half interest in a block of oil and gas leases located in Houston County to appellees, which assignment was dated August 26, 1943. The assignment purports to have been executed by appellants pursuant to their written contract with appellees dated July 14, 1943. Appellants made no contention that the assignment was executed through fraud, accident, or mistake, but they pled (1) that there was no lawful delivery of the assignment to appellees, and (2) that if there was such delivery, the assignment never became effective to transfer the title to the undivided half interest in the leases because the transfer was made subject to a condition precedent, which condition or event never occurred.

Appellants attached to their pleadings as exhibits and pled fully the copy of the aforesaid contract of July 14, 1943, and a copy of the aforesaid assignment. Appellants also attached to their petition as Exhibit "C" a copy of a letter from them to the escrow agent, dated June 30, 1944, directing him to deliver the assignment to appellees and informing him that the four wells which appellees were to drill had been completed to appellants' satisfaction.

The contract of July 14, 1943, is lengthy, but for present purposes it is sufficient to say that by its terms appellees were bound to drill into the Woodbine sand, and to equip, four wells. The Woodbine sand was found at the location of the leases at about a depth of 6,000 feet. Paragraph 3 of the contract provides that in consideration of appellees undertaking to so drill and equip four wells "and subject to the other terms, conditions and provisions hereof Second Parties (appellants) have sold and hereby agree to convey, assign and transfer unto First Parties an undivided ½ interest * * *."

Paragraph 4 of the contract provides that before appellees shall be required to begin drilling operations, appellants shall execute assignments to appellees of an undivided ½ interest "which assignments shall be subject to the provisions of this agreement". The paragraph further provides that the assignment shall be placed in escrow with Jerry B. Newby "with authority and instructions to deliver the same to First Parties when they have completed the drilling and the completion of the fourth well provided for in this agreement, and paid all costs thereof".

Paragraph 13 provides "if the First Parties drill the fourth well hereunder, upon the completion of said fourth well First Parties shall have fully complied with all of their obligations hereunder and shall be entitled to receive without conditions assignments to a full undivided ½ interest * * * and escrow holder Jerry B. Newby is fully authorized and empowered to deliver such assignments to First Parties * * * upon the First Parties * * * furnishing the said Newby with the affidavit of the drilling contractor * * * that the First Parties have drilled and completed the four wells * * *," and that all costs have been paid.

Exhibit "C" to appellants' pleadings, being a letter to the escrow agent, notified the escrow agent that the four wells specified in the escrow agreement had been drilled and equipped by appellees to appellants' satisfaction and appellants stated that they were satisfied that all bills for the drilling and equipping of the said four wells that had not been paid, if any, would be forthwith paid "and we hereby waive the making and furnishing you as escrow agent any and all of the affidavits set forth in or implied in said escrow agreement as a condition to delivering" the assignment. With respect to said letter to the escrow agent, appellants alleged in their first trial amendment that Exhibit "C" was attached to their fourth

amended original petition for the purpose of showing the wording of the said letter from appellants made "in reliance upon a promise made by (appellees) that the fourth well * * * would be thereafter completed; that plaintiffs in no manner rely upon said letter but instead present same for the purpose of showing that the statement therein, that said Mills well had been completed to their satisfaction, was not true and that (appellees) knew at the time said letter was signed and at the time it was delivered by these plaintiffs that said statement was not true and that said Mills well had not then been completed to the satisfaction of these plaintiffs".

Appellants alleged in their pleadings that after the fourth well was drilled to the Woodbine sand, the appellees induced them to permit the assignment to be delivered from escrow by promising appellants that they, appellees, would thereafter complete said fourth well.

It may be added that appellants' pleadings show that the assignment was placed of record and that under the terms of the contract of July 14, 1943, appellants were to participate in the payment of the cost of recording same and the inference is that this was done. It further appears that this suit was filed by appellants in 1947.

Appellants predicate their appeal upon six points, complaining of the action of the court in sustaining the special exceptions to their pleadings, because (1) the pleadings do not show on their face that the assignment is an unconditional assignment or if conditional such condition is only a condition subsequent; (2) that the placing of the assignment in escrow did not create only an obligation on appellees to complete the fourth well; (3) that the fact appellants' pleadings show the assignment was delivered from escrow only after almost complete performance of the contract to drill and complete the four wells did not create an obligation as distinguished from a condition to complete the fourth well; (4) that appellants' pleadings did not show appellants accepted an obigation to complete the fourth well instead of the condition that it should be completed before title to the half interest in the mineral rights

passed in this assignment; (5) that appellants can claim that the fourth well was not completed, notwithstanding the assignment was delivered out of escrow pursuant to a written instrument signed by appellants wherein it was represented the fourth well had been completed. The sixth point is broad enough to embrace the five points just indicated.

We overrule appellants' points.

■ The effect of the action of the trial court in sustaining appellees' special exceptions is to hold that appellants' pleadings were not sufficient to show (1) that there had not been a lawful delivery, or (2) that appellants were entitled to have the assignment canceled. For the purpose of testing the correctness of the trial court's action, which in effect amounted to the sustaining of a general demurrer, the allegations of appellants' pleadings must be taken as true.

It appears from appellants' allegations that they directed the escrow agent to deliver the assignment, stating in connection therewith that the four walls had been completed to their satisfaction; and it further appears from said allegations that the assignment was delivered, and duly recorded. It is clear that the delivery was a lawful one, and appellants do not here claim otherwise, they content themselves, as we understand them, with the contention that the assignment was made upon the condition precedent that the fourth well must be completed. The assignment, as indicated above, was attached to appellants' pleadings as an exhibit, and fully pled. The assignment is in usual form down to and including the habendum clause. Following the habendum clause comes appellants' covenant that they are the owners of the property therein assigned, and that they have good right and authority to make the assignment, and that they have not theretofore assigned or conveyed the same. Then comes this language, which appellants contend constitutes the full completion of the fourth well a condition precedent to the passing of the title, to wit: "It is further understood and agreed that this assignment is the same assignment referred to and contemplated in a certain contract in

writing between the assignors herein" and appellees "of date July 14, 1943, and that this assignment is subject to all of the terms, conditions, provisions and obligations set forth in said contract; * * *".

As appears above, the contract provided, in paragraph 13, that completion of the fourth well constituted a full compliance with all of appellees' obligations and that they "shall be entitled to receive without condition" the assignment. The escrow agreement protected appellants, and it was so intended, until appellees had fully complied with their obligations. "Whether a covenant is to be deemed precedent or subsequent depends upon the intention of the parties as shown by the instrument, and not upon the use of any particular set of technical words." Devlin on Deeds, 3rd Series, Vol. 2, 1779, Sec. 958. There is nothing in the language of the assignment which in and of itself should show that the completion of the fourth well was made a condition precedent to the vitality of the assignment. Of course, under appellants' pleadings it must be taken as true that the fourth well lacked something of completion, though it appears from said pleadings that it was drilled to the Woodbine sand. It also appears from said petition that the three other wells were fully completed.

Since it does not appear from the assignment that the full completion of the fourth well was a condition precedent, it must be made to appear by appellants from the contract that the completion of the fourth well was a condition precedent to the passing of title. The contract certainly intended that title should not pass until the completion of the fourth well, and this was protected against by an escrow agreement. But there is nothing in the contract to show any intention that title should not pass upon the delivery of the assignment out of escrow, but, to the contrary, the contract is not reasonably subject to any other construction.

■■ It was held in Manton v. City of San Antonio, Tex.Civ.App., 207 S.W. 951, 952, writ refused, "The general rule is that if the grant is without other consideration than the performance of the specified precedent, and the converse of this proposition must be just and beneficient, and where there have been other considerations performed, and especially where full value has been paid, the condition will not be considered a condition precedent, but will have applied to it the rules applicable to conditions subsequent." Applying this rule, since it appears from appellants' allegations that the contract required that appellees drill four wells into the Woodbine sand, and it appears that this has been done, it is necessary to construe the condition in the assignment, if a condition it is, as a condition subsequent. Furthermore, it appears from appellants' pleadings that they accepted the promise of appellees to complete whatever was not completed and took such promise in satisfaction of the condition which attached to the escrow and caused the assignment to be delivered.

Whether appellants would be entitled in any event to the remedy of cancellation, in the absence of any allegations of fraud, accident or mistake, or the showing of some equity in appellants, has not been here presented, nor has it been considered by us.

The judgment is affirmed.